***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties and their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On 12 October 2001 an employment relationship existed between plaintiff — employee and defendant-employer.
3. On 12 October 2001 Liberty Mutual was the carrier at risk.
4. The following exhibits were entered into the evidence of record at the hearing before the Deputy Commissioner:
Stipulated Exhibit 1 — Pre-Trial Agreement
Stipulated Exhibit 2 — Industrial Commission forms
Stipulated Exhibit 3 — medical records of plaintiff
Stipulated Exhibit 4 — Defendants' Responses to Plaintiff's Interrogatories
Stipulated Exhibit 5 — Plaintiff's Responses to Defendants' Interrogatories
Plaintiff's Exhibit 1 — seat belt
Defendants' Exhibit 1 — hard hat
Defendants' Exhibit 2 — inspection report
Defendants' Exhibit-3 — photos of cut area
Defendants' Exhibit 4 — seat belt
Defendants' Exhibit 5 — photos of scraper
Defendants' Exhibit 6 — photos of scraper
5. The issues before the Commission are what is plaintiff's correct average weekly wage, what additional compensation is plaintiff entitled to?
 ***********
Based upon all of the competent evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. On 12 October 2001 plaintiff was a fifty three year old male employed as a "pan" operator at defendant-employer's distribution center. Plaintiff had just begun employment with defendant-employer on 11 October 2001.
2. In October 2001 plaintiff had a tenth grade education and a GED. His work history included construction-type jobs, operating a "packer" and painting.
3. Prior to 11 October 2001 plaintiff had never operated a "pan." This type of heavy equipment, a model 621, had an air cushion seat and other personal safety equipment, including a seatbelt. Plaintiff received approximately two (2) hours training on the "pans" operation.
4. In order to load the pan, a bulldozer pushed it along the earth and then the operator drove it to the place where the dirt would be dumped out. After dumping, the operator would then return for another load.
5. Approximately one (1) hour into his first full shift as an operator of this pan, plaintiff was instructed to take the pan to a new cut and began moving earth from that location. This was the first time he had worked in this particular cut. He went down into the cut and the bulldozer pushed him and loaded the pan with earth and then he proceeded over the width of the cut to the area where he would release the dirt. After he came over the lip, he saw a mound of earth immediately in his path that appeared to him as though someone had lost part of their load. The pan hit this mound of earth or bump and when it did, it caused the cab in which plaintiff was riding to bounce up and down. That caused plaintiff to bounce up and down on the seat three (3) to four (4) times. The first time he bounced, when he landed on his seat, he felt a sharp onset of extreme pain in his lower back.
6. During his training the day before plaintiff had been instructed in how to operate the air cushion and how to properly fasten the seatbelt and wear other personal protective equipment such as a hardhat. The Full Commission finds the greater weight of the evidence is that plaintiff was wearing his seatbelt during the operation of the "pan," operated the air cushion and wore a hardhat.
7. The seatbelt was either not tight enough to protect plaintiff or the seatbelt slipped due to the violence of the bouncing pan, thereby allowing plaintiff's body to bounce up and down on the seat, causing his injury. However, plaintiff believed that he had the seatbelt properly fastened, and plaintiff did not willfully fail to fasten or tighten the seatbelt, nor was plaintiff intending to cause any injury to himself or others at the time of the incident.
8. As a result of the bouncing up and down in the seat, plaintiff sustained a comminuted or burst fracture of the vertebral body at L-1.
9. After plaintiff bounced in the seat, he managed to get the pan stopped and co-workers came to assist him as he could not initially get out of the pan by himself. With co-workers guarding and preventing him from falling, he was eventually able to climb out of the pan. He was placed in the vehicle of one of his co-workers and transported to Cleveland Memorial Hospital.
10. The physicians at Cleveland Memorial Hospital determined that plaintiff could be best treated at Carolinas Medical Center, so he was transported by ambulance to Charlotte and treated at Carolinas Medical Center by orthopedic spine specialist, Dr. Mark Hartman.
11. The Full Commission finds based upon the greater weight of the medical evidence that plaintiff's vertebra fracture into multiple pieces was caused by the severe axial up/down load bouncing during the operation of the "pan." However, these fragments were not sufficient to require surgery.
12. Dr. Hartman treated plaintiff conservatively with a "turtle shell" brace that plaintiff was required to wear for approximately six (6) months. Plaintiff was unable to work from 12 October 2001 and continuing through the present. Dr. Hartman opined plaintiff retains an eighteen percent (18%) permanent partial disability as a result of his work-related incident on 12 October 2001. The greater weight of the evidence is that plaintiff has not reached maximum medical improvement and is in need of further medical evaluation. Plaintiff missed the last couple of appointments with Dr. Hartman due to defendant's denial of the claim and plaintiff's lack of insurance.
13. Plaintiff was convicted of possession of marijuana and incarcerated with the Department of Corrections from 2 April 2002 through 4 November 2002.
14. As of the date of the hearing before the Deputy Commissioner, plaintiff has not returned to suitable employment and his symptoms were such that he could only withstand about two (2) hours of activity and then he would have to sit or lie to rest. As of the date of the hearing before the Deputy Commissioner, plaintiff was still suffering from a considerable amount of residual pain from the injury and that hampered his work activities. Plaintiff had searched for a job at every painting contractor in the Shelby area but had been unable to find any work.
15. The Full Commission finds that in light of plaintiff's physical conditions and job skills, plaintiff had performed a reasonable but unsuccessful job search.
16. Defendants initially prepared and filed a Form 60 admitting the employee's right to compensation on 22 October 2001. The defendants subsequently, on 20 October 2001, filed a Form 61 denying the claim on the basis that "employee did not sustain compensable injury arising out of the course and scope of employment; employee's condition is the result of a prior condition; employee's condition is not causally related to the employment."
17. The Full Commission finds, the greater weight of the evidence is that plaintiff did not recklessly disobey an order to use a safety device, i.e. a seatbelt and/or the air ride cushion.
18. When plaintiff was hired on 11 October 2001, plaintiff was to work at least fifty (50) hours per week at $11.50 per hour. This totals $575.00 per week. Although plaintiff was employed less than one week with defendant-employer, the greater weight of the evidence is this calculation for the average weekly wage is more fair and just for both parties. This yields a compensation rate of $383.35 per week.
19. It was necessary to hold a hearing in this case to determine the issues surrounding potential willful safety violations.
 ***********
Based upon the foregoing findings of fact, and the Full Commission enters the following additional:
 CONCLUSIONS OF LAW
1. On 12 October 2001 plaintiff sustained a compensable injury to his back arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff was not employed by defendant-employer for twelve (12) months proceeding 12 October 2001, and there is insufficient evidence regarding other average weekly wage calculations, therefore it is more fair and just to determine plaintiff's average weekly based on the promised number of hours at the promised rate. This computes to an average weekly wage of $575.00 yielding $383.35 per week compensation rate. N.C. Gen. Stat. §97-2(5).
3. As a result of plaintiff's compensable injury, he is entitled to temporary total disability at his compensable rate of $383.35 per week from 12 October 2001 to 1 April 2002 and from 5 November 2002 and continuing until further Order of the Commission. N.C. Gen. Stat. § 97-29.
4. Plaintiff is entitled to have defendants pay all medical expenses incurred by plaintiff as a result of his compensable injury for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or lessen plaintiff's period of disability. N.C. Gen. Stat. § 97-25.
5. Plaintiff is not entitled to attorney fees pursuant to N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved defendants shall pay temporary total disability to plaintiff at the rate of $383.35 per week from 12 October 2001 to 1 April 2002, and from 5 November 2002 and continuing through 1 April 2003. Those amounts that have accrued shall be paid in a lump sum.
2. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded plaintiff in Paragraph 1 of this AWARD is hereby approved for plaintiff's counsel and shall be deducted from those sums due plaintiff and payable directly to plaintiff's counsel. Thereafter, every fourth check shall be payable directly to plaintiff's counsel.
3. Defendants shall pay all medical expenses incurred by plaintiff as result of his compensable injury on 12 October 2001, when bills for same shall have been submitted to the Industrial Commission according to Industrial Commission procedures.
4. Defendants shall pay the costs.
This the ___ day of April 2004.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CS/kjd